UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
:
:
In re HARBINGER CAPITAL PARTNERS FUNDS      :
INVESTOR LITIGATION                          :
:
:
:
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 3 0 2014

12 Civ. 1244 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

On April 18, 2014, this Court heard argument on Plaintiffs' motion for reconsideration of those portions of a September 30, 2013 opinion dismissing certain of Plaintiffs' claims as precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f). Plaintiffs premise their motion on the Supreme Court's recent decision in *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014), which interpreted language from SLUSA that was central to the September 30 opinion. Although Plaintiffs' reading of *Troice* is certainly plausible, the Supreme Court's decision is less clear than Plaintiffs suggest, and there would be unwelcome practical consequences to reinstating their claims based on a misreading of that decision. Moreover, the Second Circuit is likely to weigh in soon on the implications of *Troice*—as it has an opportunity to do in at least two currently pending cases. Given the likelihood that the Circuit will provide guidance in relatively short order, this Court will reserve decision until then.

Plaintiffs in this putative class action are investors in a family of hedge funds managed by entities affiliated with Defendants Philip Falcone and Harbinger Capital Partners LLC. As relevant here, they allege that Defendants made various misrepresentations and omissions about the funds' investment in a wireless broadband company called SkyTerra Communications, Inc.

1

("SkyTerra"), later renamed LightSquared Inc. According to Plaintiffs, Defendants marketed the funds as diversified hedge funds trading in liquid assets, but they eventually used investor money to take a large ownership interest in SkyTerra without adequately disclosing this shift in strategy or its attendant risks.[1] Plaintiffs' legal theory is that Defendants' misrepresentations and omissions about SkyTerra induced investors to hold, rather than sell, their investments in the Harbinger funds. These "holder" claims may be brought only under state law. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

As relevant here, SLUSA precludes any class action brought under state law by "any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). A security is a "covered security" if it is "listed, or authorized for listing, on a national securities exchange." 15 U.S.C. §§ 78bb(f)(5)(E), 77r(b)(1). Courts have struggled to give SLUSA's "in connection with" language—which also appears in Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); *see Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006)—a broad scope that is nonetheless "not so broad as to reach any 'common-law fraud that happens to involve securities.'" *Troice*, 134 S. Ct. at 1072 (Thomas, J., concurring) (quoting *SEC v. Zandford*, 535 U.S. 813, 820 (2002)); *see also Roland v. Green*, 675 F.3d 503, 511–17 (5th Cir. 2012), *aff'd sub nom. Troice*, 134 S. Ct. 1058.

This Court previously held that SLUSA precluded Plaintiffs' claims related to Defendants' investment in SkyTerra because Defendants' misrepresentations and omissions were "in connection with" Defendants' purchases of SkyTerra stock—a covered security. This

---

[1] These allegations are detailed in the September 30 opinion. Dkt. No. 125 at 4–6; *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12 Civ. 1244 (AJN), 2013 WL 5441754, at *3–4 (S.D.N.Y. Sept. 30, 2013), *superseded on other grounds on reconsideration*, 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013).

2

conclusion rested largely on the Second Circuit's decision in *In re Herald*, 730 F.3d 112 (2d Cir. 2013), which held that claims against certain banks for aiding and abetting Bernard Madoff's Ponzi scheme were precluded notwithstanding the fact that the plaintiffs themselves bought shares in Madoff feeder funds, not covered securities. In this case too, Plaintiffs' claims were "predicated on Defendants' role in a scheme involving covered securities," so the Court held that they were precluded. Dkt. No. 125 at 25–26. The fact that Plaintiffs themselves purchased interests in hedge funds, and not covered securities, was of no moment.

In their motion for reconsideration, Plaintiffs claim that *Troice* overrules *Herald* and, by extension, this Court's September 30 opinion. The *Troice* plaintiffs, victims of a Ponzi scheme perpetrated by Allen Stanford, purchased certificates of deposit ("CDs") issued by Stanford Bank, which promised them a high, fixed rate of return purportedly generated by investing in marketable securities but actually produced by selling more CDs to investors. The Supreme Court held that these claims were not precluded because the plaintiffs themselves bought CDs, not covered securities. According to the Supreme Court, "[a] fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Troice*, 134 S. Ct. at 1066. Plaintiffs here cite this language as an unambiguous indication that their claims are also not precluded; as defense counsel conceded at argument, no one other than a fraudster actually transacted in any covered securities as a result of Defendants' misrepresentations and omissions. Tr. at 27:6–9.

But other language in *Troice* suggests that a claim is precluded under SLUSA whenever there is someone other than the fraudster "who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in" covered

3

securities. *Troice*, 134 S. Ct. at 1066 (emphasis in original). In dissent, Justice Kennedy read the phrase "ownership interest" as a gesture at the plaintiffs' argument that the Stanford CDs were distinguishable from Madoff feeder fund investments because the former, unlike the latter, gave investors no "ownership interest" in securities purchased by the fraudster. *See id.* at 1080 (Kennedy, J., dissenting) ("[T]he Court . . . appears to accept . . . that indirect ownership, where the victim buys or sells shares in a defendant fund that itself owns equities, is sufficient in certain circumstances, such as when a victim has 'some interest in the defendant's supposed portfolio.'") (quoting Brief of Respondents at 16, *Troice*, 134 S. Ct. 1058 (Nos. 12-79, 12-86, 12-88))).

This reading also has a certain intuitive plausibility. If federal securities laws address themselves chiefly to investors involved in "the taking or dissolving of ownership positions," *id.* at 1067 (majority opinion), then they might logically extend to any fraud that induces a victim to buy or sell—or hold[2]—an investment based on a misperception of the value of the covered securities underlying that investment. From this perspective, whether that investment involves owning actual covered securities, or instead buying into a vehicle whose sole purpose is to provide exposure to those securities, would not seem relevant. And as Defendants here point out, the majority never corrected Justice Kennedy's reading of its "ownership interest" language, even though it responded to other elements of his dissent. Tr. at 19:4–5. For these reasons, the Court is hesitant to agree with Plaintiffs that the phrase "ownership interest" is meaningless and that preclusion requires someone other than the fraudster to transact in actual covered securities

---

[2] Further undermining the crisp language emphasized by Plaintiffs, the *Troice* majority made clear that SLUSA precludes claims involving the *holding* of covered securities based on a fraudster's misrepresentation or omission. *See Troice*, 134 S. Ct. at 1066. In at least one respect, then, the majority did not literally mean that the fraud must be "material to a decision by one or more individuals (other than the fraudster) to *buy or to sell* a 'covered security.'" *Id.* (emphasis added).

themselves. *But see In re Tremont Sec. Law, State Law, & Ins. Litig.*, No. 08 Civ. 11117 (TPG), 2014 WL 1465713, at *3 (S.D.N.Y. Apr. 14, 2014).

However, even on Justice Kennedy's (plausible) reading, the majority's use of the phrase "ownership interest" makes *Troice*'s applicability to this case uncertain. If the majority intended to make a distinction between transacting in ownership interests in covered securities and transacting in covered securities themselves—and to suggest that even the former would trigger SLUSA preclusion—it gave no guidance on what qualifies as an ownership interest. Justice Kennedy looked to state law, suggesting that hedge fund investments do not convey ownership of the funds' assets. *See Troice*, 134 S. Ct. at 1080–81 (Kennedy, J., dissenting). But Defendants rightly question an interpretation that would require lower courts to examine the intricacies of state partnership law at the pleading stage. Instead, they propose a functional test under which an investor holds an "ownership interest" in covered securities underlying her investment whenever the value of her investment is directly related to the value of those covered securities. Tr. at 19:19–25. This case is distinguishable from *Troice* under Defendants' test, because unlike a hedge fund investment, the value of the Stanford CDs did not fluctuate directly with the value of Stanford Bank's securities holdings.

On the other hand, as Plaintiffs persuasively argue, to adopt such an economic test would take the Court uncomfortably far beyond the language of the Supreme Court's decision. And there are reasons to question an expansive reading of the majority's "ownership interest" language: the majority did not explicitly adopt—or even mention—the *Troice* plaintiffs' request to adopt a narrow holding that would effectively leave the status of feeder fund cases undecided. Instead, it articulated a remarkably broad rule. Tr. at 28:24–29:8.

Given these difficulties, the Court will reserve decision pending guidance from the Second Circuit. Although the Court is reluctant to permit such a delay in this case, several practical considerations support this forbearance. First, the Second Circuit is likely to address *Troice*'s implications in at least one Madoff feeder fund case in the reasonably near future. The appeal in *In re Kingate Management Limited Litigation*, No. 11-1397, has been fully briefed and argued since April 9, 2013, and the parties in that case submitted letters addressing *Troice* in February. Additionally, the *Herald* plaintiffs have filed a petition for rehearing or rehearing en banc, which the court of appeals might grant if it concludes that *Troice* has altered the relevant legal landscape. *See* Petition for Rehearing/Rehearing En Banc, *In re Herald*, No. 12-156 (2d Cir. Sept. 30, 2013).

Second, were this Court to reinstate Plaintiff's claims at this point based on a reading of *Troice* that the Second Circuit ultimately rejects, Defendants would likely file their own motion for reconsideration later on, further taxing the parties' and the Court's resources. This concern would be mitigated if this Court could predict the Second Circuit's decisionmaking with confidence, but such confidence is lacking in light of the foregoing discussion of *Troice*.

Finally, reserving decision may not, in fact, meaningfully delay the course of this litigation. Defendants' motions to dismiss Plaintiffs' Sixth Amended Complaint are currently pending, and discovery is stayed until those motions are decided. Once the Second Circuit issues a decision providing guidance, this Court will determine whether Plaintiffs' SkyTerra claims should be reinstated. If those claims are reinstated, then Plaintiffs will likely file a new complaint with those claims included, and Defendants can move to dismiss; if the claims are not reinstated, then the Court will resolve the pending motion to dismiss in due course. In the former scenario, the Court is comfortable that the parties and the Court can move expeditiously enough

that Defendants' new motion to dismiss will be resolved only a short time after the pending motion to dismiss otherwise would be. And in light of the significant discovery likely to take place if any of Plaintiffs' claims survive the pleading stage, any delay is likely to be reasonably minor relative to the case's overall schedule.

The parties are instructed to submit a joint letter to the Court within three days of a Circuit ruling, which letter should include a proposal regarding how to proceed in light of such ruling. In light of the foregoing, Defendants' pending motions to dismiss the Sixth Amended Complaint, Dkt. Nos. 152, 155, are hereby administratively denied with leave to refile following the Court's resolution of Plaintiffs' motion for reconsideration.

SO ORDERED.

Dated: April 30, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge