UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HARBINGER CAPITAL PARTNERS<br>FUNDS INVESTOR LITIGATION | Case No. 12-CV-1244-AJN<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF THE HARBINGER DEFENDANTS'**
**MOTION TO DISMISS THE SIXTH AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000
*Counsel for the Harbinger Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................2

I.     Plaintiffs' Allegations ........................................................................................2

    **A.**     The Harbinger Funds .........................................................................2

    **B.**     The Funds Acquire SkyTerra and Launch LightSquared ...........................4

    **C.**     Other Unrelated Matters Alleged in the 6AC ....................................5

II.    The Court's Decision on Motions to Dismiss the
Fourth Amended Complaint ..................................................................................6

ARGUMENT ................................................................................................................7

I.     Legal Standard ..................................................................................................7

II.    SLUSA Precludes Counts I and II – Despite Plaintiffs' Amendments .................7

III.   Plaintiffs Have Not Adequately Pleaded the Elements of Their Direct Claims
against the Harbinger Defendants (Counts I-III and V) .......................................11

    **A.**     The 6AC Fails to State a Claim for Fraud (Count II) ...............................11

        1.     Plaintiffs Do Not Identify Any Actionable Misstatement .............11

        2.     Plaintiffs Do Not Adequately Allege Scienter.............................12

        3.     Plaintiffs Do Not Adequately Allege Reasonable Reliance .........13

        4.     Plaintiffs Do Not Adequately Allege Causation..........................14

    **B.**     The 6AC Fails to State a Claim for
Negligent Misrepresentation (Count I)......................................................15

    **C.**     The 6AC Fails to State a Direct Claim for
Breach of Fiduciary Duty (Count III)........................................................16

    **D.**     The 6AC Fails to State a Claim for Aiding and Abetting
Breach of Fiduciary Duty (Count V)........................................................17

IV.    The Derivative Claims (Counts VI and VII) Should Also Be Dismissed .............18

    **A.**     The Court Should Decline to Exercise Supplemental Jurisdiction...........19

    **B.**     Plaintiffs Have Not Established Demand Futility
as to Fund I or Fund II ............................................................................20

    **C.**     The Derivative Claims Fail as a Matter of Law ......................................21

i

**V.**     Particularity................................................................................................................24

CONCLUSION...............................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abu Dhabi Comm. Bank* v. *Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ...................................................................12

*AHW Inv. P'ship* v. *Citigroup Inc.*,
   __ F. Supp. 2d __, 2013 WL 5827643 (S.D.N.Y. Oct. 30, 2013) ........................14, 15

*Ash* v. *McCall*,
   No. Civ. A. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ......................13, 22

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009).............................................................................................7, 18

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ..................................................................................25

*In re Bayou Hedge Fund Litig.*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007) ..................................................................7

*Buckley* v. *Deloitte & Touche USA LLP*,
   No. 06 Civ. 3291, 2007 WL 1491403 (S.D.N.Y. May 22, 2007)............................18

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996) .............................................................................22

*Carlsbad Tech., Inc.* v. *HIF Bio, Inc.*,
   556 U.S. 635 (2009)............................................................................................19

*Crigger* v. *Fahnestock & Co., Inc.*,
   443 F.3d 230 (2d Cir. 2006) ...............................................................................14

*Delebreau* v. *Bayview Loan Servicing, LLC*,
   770 F. Supp. 2d 813 (S.D. W. Va 2011)................................................................19

*DynCorp* v. *GTE Corp.*,
   215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..................................................................16

*ESBE Holdings, Inc.* v. *Vanish Acquisition Partners, LLC*,
   858 N.Y.S.2d 94 (1st Dep't 2008)........................................................................12

*Feeley* v. *NHAOCG, LLC*,
   62 A.3d 649 (Del. Ch. 2012) ...............................................................................23

*Frota* v. *Prudential-Bache Sec., Inc.*,
   639 F. Supp. 1186 (S.D.N.Y. 1986) .....................................................................24

*Golden Archer Investments, LLC* v. *Skynet Fin. Sys.*,
No. 11 Civ. 3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ..........................25

*Guttman* v. *Huang*,
823 A.2d 492 (Del. Ch. 2003) ...............................................................................21

*Hampshire Equity Partners II, L.P.* v. *Teradyne, Inc.*,
No. 04 Civ. 3318, 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ................................25

*HSH Nordbank AG* v. *UBS AG*,
941 N.Y.S.2d 59 (1st Dep't 2012) ..........................................................................12

*Hydro Invs., Inc.* v. *Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000) .....................................................................................16

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001) ..................................................................................13

*Khanna* v. *McMinn*,
No. Civ. A. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) .........................22

*Kolari* v. *New York-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006) ..................................................................................19

*Krock* v. *Lipsay*,
97 F.3d 640 (2d Cir. 1996) ...................................................................................11

*Kwalbrun* v. *Glenayre Techs., Inc.*,
201 F.3d 431, 1999 WL 1212491 (2d Cir. Dec. 16, 1999)........................................14

*Lasky* v. *Shearson Lehman Bros. Inc.*,
139 F.R.D. 597 (S.D.N.Y. 1991) ...........................................................................25

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008) ...............................................................................22

*Lewis* v. *Rosenfeld*,
138 F. Supp. 2d 466 (S.D.N.Y. 2001) .....................................................................24

*Marino* v. *Grupo Mundial Tenedora, S.A.*,
810 F. Supp. 2d 601 (S.D.N.Y. 2011) ...........................................................16, 18, 25

*Matsumura* v. *Benihana Nat'l Corp.*,
542 F. Supp. 2d 245 (S.D.N.Y. 2008) .....................................................................12

*In re Nat'l Auto Credit, Inc. S'holders Litig.*,
No. Civ. A. 19028, 2003 WL 139768 (Del. Ch. Jan. 10, 2003) ................................22

*Oskar* v. *IDS Property Cas. Ins. Co.*,
  No. 09-CV-04516, 2011 WL 1103905 (E.D.N.Y. March 23, 2011)..........................19

*Paige Capital Mgmt., LLC* v. *Lerner Master Fund, LLC*,
  Civ. A. No. 5502-CS, 2011 WL 3505355 (Del. Ch. Aug. 8, 2011) ...........................23

*Related Westpac LLC* v. *JER Snowmass LLC*,
  C.A. No. 5001-VCS, 2010 WL 2929708 (Del. Ch. July 23, 2010)...........................18

*Roberts* v. *112 Duane Assocs. LLC*,
  821 N.Y.S.2d 33 (1st Dep't 2006)..........................................................................18

*Romano* v. *Kazacos*,
  609 F.3d 512 (2d Cir. 2010) ......................................................................................9

*Seibert* v. *Sperry Rand Corp.*,
  586 F.2d 949 (2d Cir. 1978) ....................................................................................12

*Starr Found.* v. *Am. Int'l Grp., Inc.*,
  901 N.Y.S.2d 250 (1st Dep't 2010)..........................................................................15

*Steinberg* v. *Sherman*,
  No. 07 Civ. 1001 (WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008)....................16

*In re Synthes S'holder Litig.*,
  50 A.3d 1022 (Del. Ch. 2012) ..................................................................................22

*Tellabs Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................13

*Toledo Fund, LLC* v. *HSBC Bank USA, Nat'l Assoc.*,
  No. 11 Civ. 7686 (KBF), 2012 WL 364045 (S.D.N.Y. Feb. 3, 2012) ......................16

*Trenwick Am. Litig. Trust* v. *Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006) ..................................................................................22

*In re USACafes, L.P. Litig.*,
  600 A.2d 43 (Del. Ch. 1991) ....................................................................................23

*Wynn* v. *AC Rochester*,
  273 F.3d 153 (2d Cir. 2001) ....................................................................................11

*Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*,
  399 F. Supp. 2d 375 (S.D.N.Y. 2005) ......................................................................11

*SEC* v. *Zandford*,
  535 U.S. 813 (2002)....................................................................................................9

*Zerman* v. *Ball*,
   735 F.2d 15 (2d Cir. 1984) ......................................................................... 25

*Zoren* v. *Genesis Energy, L.P.*,
   195 F. Supp. 2d 598 (D. Del. 2002).......................................................... 10

**STATUTES**

28 U.S.C. § 1367.............................................................................................. 19

**OTHER AUTHORITIES**

Lubaroff & Altman, DELAWARE LIMITED PARTNERSHIPS § 11.2.11 ................................ 23

Fed. R. Civ. P. 9(b) ......................................................................................... 24

Defendants Harbinger Capital Partners LLC, Harbinger Holdings, LLC, Harbinger Capital Partners GP, L.L.C., Harbinger Capital Partners Special Situations GP, LLC, Harbinger Capital Partners Special Situations Offshore GP, L.L.C., and Philip A. Falcone (collectively, the "Harbinger Defendants"), by and through their attorneys, respectfully request that the Court dismiss the Sixth Amended Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs are disgruntled investors in certain funds operated by the Harbinger Defendants, which involved the prospect of high returns, coupled—as plaintiffs were warned—with an inevitable risk of significant losses.  Plaintiffs' Sixth Amended Complaint (the "6AC")—their *seventh* attempt to plead cognizable class and derivative claims—primarily seeks to use the courts and the law as an insurance policy against losses suffered through the Harbinger funds' investment in LightSquared Inc. ("LightSquared"), a telecommunications company that filed for bankruptcy protection in May 2012.  Despite plaintiffs' repeated amendments, the 6AC still fails to state a claim and should now be dismissed with prejudice.

*First*, plaintiffs' purported class claims for fraud and negligent misrepresentation are precluded by SLUSA because they involve allegations of fraud in connection with the purchase or sale of "covered securities."  The Court previously dismissed plaintiffs' class claims with prejudice to the extent they were "predicated on the purchase of SkyTerra," because they involved the purchase of covered securities, and directed plaintiffs to re-plead.  The 6AC essentially ignores the Court's directives, and, as before, purports to plead class claims based on alleged misstatements and omissions related to the SkyTerra purchase.  SLUSA precludes these claims in their entirety.

---

[1]    Citations to "Ex." or "Exs." refer to exhibits attached to the Declaration of Daniel J. Leffell in Support of the Harbinger Defendants' Motion to Dismiss the Sixth Amended Complaint (the "Leffell Decl.").

*Second*, plaintiffs have not adequately pleaded the elements of any of their class claims in any event.  Among other flaws, the 6AC is devoid of any factual allegations supporting actionable misstatements, scienter, reasonable reliance, or causation, or establishing a special relationship between plaintiffs and the Harbinger Defendants.  The fiduciary duty claim fails because plaintiffs have not adequately alleged a breach, and because certain Harbinger Defendants do not owe fiduciary duties directly to investors.

*Third*, if the Court dismisses the class claims, it should decline to exercise supplemental jurisdiction over plaintiffs' derivative claims for breach of fiduciary duty.  Alternatively, the Court should dismiss the derivative claims for failure to allege demand futility and because, among other reasons, certain Harbinger Defendants do not owe the relevant fiduciary duties.

*Fourth*, plaintiffs have failed to plead their class claims—which, however denominated, sound in fraud—with the particularity required by Rule 9(b).  Plaintiffs' inability to plead fraud with particularity, especially given their multiple amendments, warrants dismissal with prejudice.

In sum, the 6AC fails to state a claim and should be dismissed in its entirety.

## BACKGROUND

### I.     Plaintiffs' Allegations[2]

### A.  The Harbinger Funds

The Harbinger Defendants manage several private investment funds, including the six funds at issue in this action (collectively, the "Funds"):  Harbinger Capital Partners Fund I, L.P. ("Fund I"), Harbinger Capital Partners Offshore Fund I, Ltd. ("Offshore Fund I"), Harbinger Capital Partners Fund II, L.P. ("Fund II"), Harbinger Capital Partners Offshore Fund II, Ltd.

("Offshore Fund II"), Harbinger Capital Partners Special Situations Offshore Fund L.P. (the "Special Situations Offshore Fund"), and Harbinger Capital Partners Special Situations Fund L.P. (the "Special Situations Fund").  (6AC ¶¶ 36-41.)

Defendant Harbinger Capital Partners GP, L.L.C. ("HCP GP") is the general partner of Fund I and Fund II, which are both Delaware limited partnerships.  (*Id.* ¶¶ 31, 36-37.)  Defendant Harbinger Capital Partners Special Situations GP, LLC ("Special Situations GP") is the general partner of the Special Situations Fund, which is a Delaware limited partnership.  (*Id.* ¶¶ 32, 48.)  Defendant Harbinger Capital Partners Special Situations Offshore GP, L.L.C. ("Special Situations Offshore GP") is the general partner of the Special Situations Offshore Fund, which is a Cayman exempted limited partnership.  (*Id.* ¶¶ 33, 41; *see* Robinson Decl. ¶ 12.)[3]  Defendant Harbinger Capital Partners LLC ("HCP") is the investment manager of Offshore Fund I and Offshore Fund II, which are Cayman exempted companies.  (*Id.* ¶¶ 28, 39-40.)  Defendant Harbinger Holdings, LLC ("Holdings") is the manager of HCP GP, Special Situations GP, and HCP, and the managing member of Special Situations Offshore GP.  (*Id.* ¶¶ 29, 44-45.)  Finally, Defendant Falcone is the managing member of Holdings.  (*Id.* ¶ 34.)

The Funds issued confidential offering memoranda ("COMs") to potential investors, describing (among other things) each fund's structure, anticipated investment strategy, and management fees.  (*See id.* ¶¶ 191, 195.)  Each COM contains extensive risk disclosures, including about risks related to volatility, limited liquidity, valuation, investments in "special situations," an "activist strategy," and lack of diversification.  (*See* Exs. 2-7.)

---

[2]   The relevant factual allegations are described in more detail in the Memorandum of Law in Support of the Harbinger Defendants' Motion to Dismiss the Fourth Amended Complaint (Dkt. No. 102) and the Court's September 30, 2013 order (Dkt. No. 125) (the "September 30 Order").

[3]   Citations to "Robinson Decl." refer to the Declaration of Hector George Robinson in Support of Defendants' Motions to Dismiss Plaintiffs' Fourth Amended Complaint (Dkt. No. 93), attached as Leffell Decl. Ex. 1.

Plaintiffs Lili Schad, Klein Family Partnership L.P., The Edward M. Armfield Sr. Foundation Inc., Dr. Randall Lang, and Anil Bhardwaj (collectively, "Plaintiffs") invested in certain Funds pursuant to subscription agreements.  (*Id.* ¶¶ 23-27 & 197.)

### B.  The Funds Acquire SkyTerra and Launch LightSquared

Among other investments, the Funds purchased debt and equity issued by SkyTerra Communications, Inc. ("SkyTerra"), a publicly traded telecommunications company.  (6AC ¶¶ 48-51; Ex. 8 ¶¶ 3-4.)  In March 2010 the FCC approved the Funds' acquisition of SkyTerra.  (*See* Ex. 8 at 2.)  Shortly thereafter, the Funds closed on the acquisition, thereby taking SkyTerra private, and changed the company's name to "LightSquared."  (*See* Sept. 30 Order at 5.)

In November 2010, LightSquared applied to the FCC for certain technical modifications to its existing network authorization.  (*See* Exs. 9 ¶ 1 & 10 ¶¶ 2-4 & p. 1 n.2.)  During the public comment period, the GPS industry asserted that GPS devices might be susceptible to "receiver overload" from neighboring transmissions within LightSquared's own allotted spectrum.  (*See* Sept. 30 Order at 5-6; Ex. 11 ¶ 54; Ex. 12 at 2.)  The potential for receiver overload arose because legacy GPS devices improperly received signals from outside the GPS spectrum.  (*See* *id.*)  Importantly, while the GPS industry did not articulate its concerns until 2010—despite "numerous [earlier] opportunities" to do so (Ex. 12 at 2)—the issue with GPS devices was mentioned in the public record at least as early as 2001.  (*See* 6AC ¶ 123.)

In January 2011, the FCC granted LightSquared's application (6AC ¶ 65), subject to certain conditions (Ex. 10 ¶¶ 1, 39-43).  The FCC order, which was in the public record, expressly noted that if "outcomes consistent with the purpose of the [relevant network rules] and the public interest" did not "actually materialize," the FCC could "take further action to modify LightSquared's [network-operation] authority."  (*Id.* ¶ 35.)

In February 2012, the FCC proposed vacating the January 2011 order and modifying

LightSquared's network-operation authority (Ex. 13), and issued a public notice inviting comments on its proposal (Ex. 14; *see also* 6AC ¶ 72).  The FCC has not yet issued a final decision with respect to the January 2011 order.  However, the 6AC alleges that "LightSquared's business began to unravel" (6AC ¶ 88) because LightSquared was unable to generate revenues and has not resolved the FCC issues in its favor, and that the FCC's February 2012 proposal "resulted in [LightSquared's] bankruptcy."  (*Id.* ¶ 87.)  LightSquared and its subsidiaries filed for bankruptcy on May 14, 2012.  (*Id.* ¶ 97.)

### C.  Other Unrelated Matters Alleged in the 6AC

The 6AC also describes two civil actions, unrelated to LightSquared, filed by the Securities and Exchange Commission against certain Harbinger Defendants.  The first SEC action challenged (1) a loan transaction between Falcone and the Special Situations Fund in 2009 and (2) alleged "preferential treatment" of certain investors in Fund I and Offshore Fund I.  (*See* 6AC ¶¶ 103-109; Ex. 15 ¶¶ 14, 16, 60-65.)  The second SEC action challenged an alleged "short squeeze" of bonds issued by a bathroom-fixture company called MAAX Holdings, Inc.  (*See* 6AC ¶ 110; Ex. 16.)  On September 16, 2013, the court entered a final consent judgment resolving both SEC actions as to the relevant Harbinger Defendants.

Plaintiffs attempt to connect the SEC actions to LightSquared by alleging that they rendered LightSquared "politically toxic," and thereby deprived Falcone of a "fighting chance in Washington to find a last-minute political solution" to the GPS interference problem.  (6AC ¶ 133.)  On its face, this theory is wholly speculative, and Plaintiffs allege no facts indicating that the FCC or any political figure even considered the SEC matters in connection with any decision about LightSquared.[4]  Indeed, Plaintiffs elsewhere assert that Defendants' alleged efforts to

---

[4]    In this regard, Plaintiffs only quote news reports about the beliefs of "LightSquared's lenders."  (6AC ¶ 136.)

"improperly influence" the government amounted to breaches of fiduciary duty.  (*Id.* ¶ 136.)

## II.    The Court's Decision on Motions to Dismiss the Fourth Amended Complaint

Plaintiffs' Fourth Amended Complaint (the "4AC") purported to assert fraud and related claims on behalf of a putative class of all persons who acquired limited partnership interests in the Funds prior to December 31, 2011.  The 4AC also purported to assert derivative claims on behalf of the Funds under Delaware and Cayman law.  Based on the same factual allegations described above, the 4AC challenged the LightSquared investment as an improper and excessively risky shift in strategy that was not disclosed in the Funds' offering materials.

On September 30, 2013, the Court issued an order on defendants' motions to dismiss the 4AC.  As relevant here, the Court dismissed with prejudice all of Plaintiffs' class claims to the extent they were "predicated on the purchase of SkyTerra," on the ground that such claims alleged misrepresentations or omissions in connection with purchases of covered securities, and thus were precluded by SLUSA.  (Sept. 30 Order at 30.)  The Court also dismissed with prejudice (1) the class claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty to the extent they were not based on "nondisclosure or differential treatment allegations"; (2) the class claim for unjust enrichment; and (3) the derivative claim purportedly asserted under Cayman law on behalf of Offshore Fund I, the Master Fund, and the Special Situations Offshore Fund.[5]  (*Id.* at 20, 42-43.)  The Court granted Plaintiffs a "final opportunity to file an amended complaint and re-plead any remaining claims in a manner consistent with this opinion and that clearly outlines both the claims against each individual Defendant and the particular allegations supporting each claim."  (*Id.* at 43.)

On October 14, 2013, Plaintiffs filed the Fifth Verified Amended Class Action and

---

[5]    Fund II has moved for reconsideration of the portion of the September 30 Order that declined to dismiss the derivative claim purportedly asserted on its behalf.  (Dkt. No. 128.)

Derivative Complaint (the "5AC"), and on November 4, 2013, Plaintiffs filed the 6AC to correct certain typographical errors in the 5AC.  Plaintiffs made only perfunctory efforts to comply with the Court's September 30 Order:  the 6AC deleted a number of paragraphs, added allegations concerning the recent settlement in the SEC matters, and placed certain factual allegations under separate headings for "DERIVATIVE CLAIMS" and "DIRECT CLAIMS."

## ARGUMENT

### I.  Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim for relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  While the Court must accept "well-pleaded factual allegations" as true, it should not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action."  *Id*.  The Court is permitted to "consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit."[6]  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007) (citing *Rothman* v. *Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000)).

### II.   SLUSA Precludes Counts I and II – Despite Plaintiffs' Amendments

Plaintiffs' purported class claims for negligent misrepresentation and fraud (Counts I and II) should be dismissed because they are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").[7]  In connection with Defendants' motion to dismiss the claims asserted in the 4AC, it was undisputed that all elements required for SLUSA preclusion

---

[6]   Under this standard, the Funds' offering documents are properly considered even though Plaintiffs have deleted references to them in the 6AC, since they are clearly in Plaintiffs' possession and were "relied upon in bringing the suit," *In re Bayou*, 534 F. Supp. 2d at 413.  (*See, e.g.*, 4AC ¶¶ 141-46.)

[7]   Plaintiffs' remaining direct claims, for breach of fiduciary duty (Count III) and aiding and abetting a breach of fiduciary duty (Count V), do not appear to rest on alleged misrepresentations or omissions related to SkyTerra or LightSquared.  (*See* 6AC ¶¶ 224 & 236.)  However, to the extent Count III and Count V incorporate such allegations, they are also precluded by SLUSA for the reasons below.

were satisfied except one:  the allegation of  misrepresentations and manipulations in connection

with the purchase or sale of a covered security.  The Court found SLUSA preclusion, based on

the Funds' purchases of a covered security in their acquisition of SkyTerra, the company that

became LightSquared.  (Sept. 30 Order at 27-28.)

While Plaintiffs had argued that some of their allegations were not related to the

SkyTerra acquisition, and thus allegedly were not precluded, the Court noted the difficulty posed

by Plaintiffs' "summary incorporation of all allegations and the intermingling of various

allegations" in the 4AC (*id.* at 30) and directed Plaintiffs to re-plead their class claims so they

would not be "predicated on the purchase of SkyTerra."  (*Id.* at 42.)

In the 6AC, Plaintiffs have essentially ignored the Court's clear directive to plead non-

precluded claims.  Instead, Plaintiffs have again engaged in exactly the same type of

"intermingling" and "incorporation" that the Court directed them to avoid (*id.* at 30), and

SLUSA preclusion continues to apply.

For example, Plaintiffs allege that the Harbinger Defendants began to invest in SkyTerra

and LightSquared, but "did not disclose to investors the nearly impossible technical and

regulatory obstacles facing the venture . . . ."  (6AC ¶ 7.)  According to Plaintiffs, it was

"[u]ndisclosed to investors" that "LightSquared's plan was materially flawed."  (*Id.* ¶ 8.)

Plaintiffs further allege that "Harbinger changed the fundamental nature of its investment

strategy when it acquired LightSquared and it never disclosed this fact or the material related

risks to investors."  (*Id.* ¶¶ 151 & 153.)  All of these allegations are expressly incorporated into

the Plaintiffs' re-pled claims for negligent misrepresentation and fraud.[8]  Moreover, Count I (the

---

[8]   Both of these claims "incorporate by reference each and every allegation" in the 6AC, except for "those
averring fraud and those pertaining to Derivative Claims."  (6AC ¶¶ 210, 216.)  The incorporated allegations
thus include (1) numerous factual allegations concerning the SkyTerra acquisition and LightSquared (6AC ¶¶ 7,
8, 149-151, 153), (2) thirty-nine paragraphs related to LightSquared under the heading "DIRECT CLAIMS:

negligent misrepresentation claim) expressly alleges that "Defendants made numerous false and misleading representations about the Funds to Plaintiffs . . . concerning, among other things, the Funds' investment strategy, the risk management strategies that would be employed, and the prospects for the Funds' underlying investments."  (*Id.* ¶ 212.)  These alleged misrepresentations are clearly "predicated on the purchase of SkyTerra," and for the reasons explained in the September 30 Order, any claims based on them are precluded under SLUSA.[9]

Furthermore, in the section on damages and loss causation—which expressly applies to "ALL CLAIMS" (*id.* at 59)—Plaintiffs allege that "more than $3 billion" was improperly "diverted from the Funds to LightSquared," and that "[a]s a direct result of the Defendants' fraudulent and/or grossly negligent misrepresentations of the investment objectives of the Funds, and of the risks inherent in the LightSquared folly that materialized, investors and the Funds have lost almost all of the $3 billion."  (*Id.* ¶¶ 199 & 202.)  Plaintiffs' theory of damages plainly is "predicated on the purchase of SkyTerra," and the 6AC fails completely to allege a theory of damages that would allocate any purported damages between (1) the SkyTerra acquisition itself, and (2) the alleged post-acquisition misrepresentations.  Thus, Plaintiffs' theories of wrongdoing and damages are inextricably bound up with alleged non-disclosures concerning SkyTerra and LightSquared.  This is sufficient for SLUSA preclusion.[10]

---

DEFENDANTS' FALSE AND MISLEADING STATEMENTS TO THE INVESTORS" (*id.* ¶¶ 148-187), and (3) the allegations under the heading "ALL CLAIMS:  DAMAGES AND LOSS CAUSATION" (*id.* ¶¶ 198-202).

[9]  To the extent Plaintiffs attempt to allege post-acquisition misrepresentations, these are also "predicated on the purchase of SkyTerra" because they depend on the acquisition (and the resulting investment in LightSquared) for their alleged falsity.  For example, Plaintiffs allege that a statement by Falcone that "the Funds were equally exposed to long and short positions 'to hedge risk'" was "false and misleading because the Funds at that time owned 100% of the equity of LightSquared (a particularly risky long position) . . . ."  (6AC ¶¶ 154-155.)  This allegation clearly depends on the LightSquared investment itself, and not any post-purchase representations about the company's risk or business prospects, for its claimed falsity.

[10]  *See SEC* v. *Zandford*, 535 U.S. 813, 819 (2002) (the phrase "in connection with" should be construed "not technically and restrictively but flexibly to effectuate its remedial purposes"); *Romano* v. *Kazacos*, 609 F.3d 512, 524 (2d Cir. 2010) (noting that *Dabit* "does not pivot on temporal limitations" and finding SLUSA

*Zoren* v. *Genesis Energy, L.P.*, 195 F. Supp. 2d 598 (D. Del. 2002), is instructive:  In *Zoren*, the plaintiff challenged public offerings in 1996 and 1998, as well as a financial restructuring in 2000.  The court found SLUSA preclusion, noting that the plaintiff had chosen "to tie the restructuring and public offering allegations so closely together" and thus could not "claim the reorganization charges [were] truly independent of the earlier sales of securities.  This pattern of fraud, culminating in the restructuring, satisfies SLUSA and results in dismissal of all claims."  *Id.* at 605.[11]

Exactly the same is true here:  Plaintiffs easily could have limited their fraud and negligent misrepresentation claims to matters that "do not relate in any way in covered securities."  (Dkt. No. 107 at 21.)  Indeed, in opposing the Harbinger Defendants' previous motion to dismiss, Plaintiffs argued that the Falcone loan and allegations of preferential redemptions supported non-precluded claims.  (*Id.*)  However, instead of limiting the claims as they suggested, Plaintiffs have chosen to allege non-disclosures concerning the SkyTerra acquisition and the resulting investment in LightSquared, and to seek damages on that basis.  As explained above, all such allegations rest on alleged misrepresentations or omissions concerning transactions in covered securities, and as before, there is no feasible way to separate this precluded theory from potentially non-precluded ones.

Because Plaintiffs have made no meaningful effort in their ***seventh*** pleading to allege narrower claims that might have avoided SLUSA preclusion, the class claims for fraud and

---

preclusion where eighteen months elapsed between the alleged fraud and the purchase or sale of securities) (citing *SEC* v. *Pirate Investor LLC*, 580 F.3d 233, 245 (4th Cir. 2009) ("The 'in connection with' test is satisfied when the proscribed conduct and the sale are part of the same fraudulent scheme.")).

[11]   *See also id.* at 604, 606 (rejecting contention that allegations about public offerings could be characterized "simply as 'background facts'" and noting that plaintiff sought damages "as a result of [all] the acts and transactions complained of herein"; complaint alleged a "'unitary scheme of fraud' that began before, and continued after," the covered securities transactions).

negligent misrepresentation should be dismissed with prejudice.[12]

### III.   Plaintiffs Have Not Adequately Pleaded the Elements of Their Direct Claims against the Harbinger Defendants (Counts I-III and V)

In any event, all of Plaintiffs' purported direct claims against the Harbinger Defendants—for fraud, negligent misrepresentation, breach of fiduciary duty and aiding and abetting breach of fiduciary duty—are inadequate as a matter of law because the 6AC's factual allegations, accepted as true, fail to state a claim on which relief may be granted.

### A.  The 6AC Fails to State a Claim for Fraud (Count II)

Under New York law,[13] a fraud claim requires (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.  *Wynn* v. *AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

Here, Plaintiffs' fraud claim rests on various alleged misrepresentations and omissions in investor communications (such as due diligence questionnaires and portfolio updates) and press releases.  Plaintiffs contend that these misrepresentations were made with scienter, that Plaintiffs somehow reasonably relied on the misrepresentations in deciding to remain invested in the Funds, and that Plaintiffs were injured as a result.  (6AC ¶¶ 217-20.)  As explained below, Plaintiffs' fraud allegations are inadequate as a matter of law.

### 1.  Plaintiffs Do Not Identify Any Actionable Misstatement

First, the fraud claim should be dismissed because virtually all of the alleged

---

[12]   *See, e.g.*, *Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 399 F. Supp. 2d 375, 379 (S.D.N.Y. 2005) (based on "repeated failure to cure deficiencies in pleading," claims may be dismissed without leave to amend).

[13]   New York law applies to Plaintiffs' claims for fraud and negligent misrepresentation.  New York uses an "interest analysis" to determine the law governing these claims, which looks "almost exclusively" at the parties' domiciles and the locus of the tort.  *Krock* v. *Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996).  Here, the allegedly tortious conduct primarily occurred in New York and several parties are New York domiciliaries.

misstatements are non-actionable forward-looking statements or statements of opinion.[14]  *See*

*Matsumura* v. *Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 253 (S.D.N.Y. 2008) ("[A]

promissory statement of what will be done in the future gives rise *only* to a breach of contract

cause of action." (emphasis in original)); *ESBE Holdings, Inc.* v. *Vanish Acquisition Partners,*

*LLC*, 858 N.Y.S.2d 94, 95 (1st Dep't 2008).  Some statements were even made by non-parties,

such as LightSquared's former CEO, Sanjiv Ahuja (who is misidentified in the 6AC as "HCP

CEO," 6AC ¶ 156), and "LightSquared" itself (*id.* ¶ 168).  The remaining alleged misstatements

concern the FCC's various orders and directives,[15] and such statements cannot be misleading as a

matter of law because the allegedly misrepresented information was publicly available.[16]

## 2.  Plaintiffs Do Not Adequately Allege Scienter

The fraud claim also should be dismissed because Plaintiffs do not adequately allege

scienter.  The pleading requirements for scienter under New York law are similar to those under

federal securities law and require the plaintiff to allege either (1) "motive and opportunity to

commit fraud" or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."

*Abu Dhabi Comm. Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009)

(citing *Kalnit* v. *Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001)).  Where motive and opportunity

are alleged, the facts pleaded must support an inference of scienter that is "cogent and at least as

---

[14]   *See, e.g.*, 6AC ¶ 165 (expressing "belie[f]" about the "next generation network," describing spectrum that "could be worth" more in the future, and  describing "expected demand growth"); ¶ 174 (investor letter from Harbinger stating that "[t]he agreement establishes a 15-year strategic partnership between Lightsquared and Sprint that we believe will be transformative for LightSquared"); ¶ 181 ("LightSquared is committed to working with the FCC, NTIA and others to find solutions that mitigate the interference issues and we look forward to keeping you informed on any developments.").

[15]   *See, e.g.*, 6AC ¶¶ 161-162, 165, 177-179, 180-183 (alleging mischaracterizations of FCC orders and actions, all of which were publicly available at the time the purported misstatements were made).   Moreover, as explained below, the public availability of the FCC orders and related information also undercuts Plaintiffs' assertions of reasonable reliance on the alleged misstatements by the Harbinger Defendants.

[16]   *See HSH Nordbank AG* v. *UBS AG*, 941 N.Y.S.2d 59, 66 (1st Dep't 2012); *cf. Seibert* v. *Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) ("Although the underlying philosophy of federal securities regulations is that

compelling as any opposing inference of nonfraudulent intent." *Tellabs Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  Motives "that are generally possessed by most corporate directors and officers do not suffice," *Kalnit*, 264 F.3d at 139, and motive allegations cannot be premised on matters that would also be "beneficial to all shareholders, not just the defendant[s] specifically."  *Id.* at 142.

Plaintiffs do not allege strong circumstantial evidence of the conscious misbehavior or recklessness of any Harbinger Defendant; nor do Plaintiffs adequately allege motive and opportunity to commit fraud.  At most, Plaintiffs allege that Falcone tried to "gamble" on a personal "vision" related to LightSquared.  (*E.g.*, 6AC ¶ 9.)  This vague allegation plainly fails to support any plausible—much less "cogent" or "compelling"—inference of scienter.  Even if Falcone had such a personal "vision," that does not explain why Harbinger would invest in a company known to be as unpromising as Plaintiffs allege.[17]  Moreover, Plaintiffs' suggestion that Falcone's interests somehow diverged from those of other investors makes no sense. Because Falcone personally "invests in the Funds" (6AC ¶ 34), Falcone—like Plaintiffs—is exposed to the risk of LightSquared, and stands to profit if LightSquared succeeds.  This alignment of economic interests negates any inference of scienter.

### 3.  Plaintiffs Do Not Adequately Allege Reasonable Reliance

Even if Plaintiffs had established some actionable misstatement made with scienter— which they have not—the fraud claim should be dismissed because Plaintiffs do not adequately allege reasonable reliance.  The 6AC misleadingly suggests that the issues with the GPS industry

---

of full disclosure, there is no duty to disclose information to one who reasonably should already be aware of it.") (internal citation and quotation marks omitted).

[17]  *Cf. Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *9 (Del. Ch. Sept. 15, 2000) ("[I]t is simply illogical to presume that McKesson directors would *knowingly* cause McKesson to acquire a company with significant, undisclosed earnings misstatements.  Nothing in the pleadings remotely suggests a reason why McKesson would purposefully buy such a company . . . .").

and the FCC were uniquely known to the Harbinger Defendants, and that the Harbinger

Defendants were Plaintiffs' exclusive source for information about these matters.  (*See* 6AC

¶¶ 11 & 12.)  In fact, however, all of the relevant FCC documents were in the public record, and

thus readily available to Plaintiffs.  The 6AC even quotes an FCC notice from 2001 as describing

the possibility that "unwanted emissions from terrestrial stations" might "interfer[e] with GPS

receivers."  (*Id.* ¶ 123.)  Moreover, Plaintiffs allege that "the [telecommunications] industry was

aware of the potential for massive GPS interference" if LightSquared were to operate its network

(*id.* ¶ 65).[18]  Plaintiffs' apparent failure to conduct diligence on an investment that allegedly

involved "more than half of the Funds' resources" (6AC ¶ 6) is not excused where, as here, the

allegedly misrepresented matters are not "peculiarly within [the] defendant's knowledge."[19]

*Crigger* v. *Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

### 4.  Plaintiffs Do Not Adequately Allege Causation

Finally, Plaintiffs' fraud claim fails because the 6AC does not demonstrate that the

alleged misstatements and omissions proximately caused Plaintiffs' alleged losses.[20]

In conclusory fashion, Plaintiffs allege that the purported misrepresentations caused them

to "continue holding and not redeem" their investments in the Funds, and that as a result, they

have suffered losses because the "$3 billion investment in now-bankrupt LightSquared is almost

completely gone."  (6AC ¶¶ 198; 214-15; 218-20.)  These allegations fail to establish causation

---

[18]   *See, e.g.*, *Kwalbrun* v. *Glenayre Techs., Inc.*, 201 F.3d 431, 1999 WL 1212491, at *2 (2d Cir. Dec. 16, 1999) ("Plaintiffs in this case concede that industry groups . . . were aware of the possibility of impending regulatory action[,] . . . precisely the sort of industry-wide information that is not the proper subject of a securities fraud claim.").

[19]   Matters other than LightSquared were also disclosed, precluding any showing of reasonable reliance:  Plaintiffs concede that the Falcone loan was disclosed to investors (*see* 6AC ¶ 13), and the Funds' governing agreements clearly stated that redemption terms could be waived or modified for certain large or strategic investors.  (*See* Ex. 17 § 8.02(g); Ex. 18 § 27(a).)

[20]   *See AHW Inv. P'ship* v. *Citigroup Inc.*, __ F. Supp. 2d __, 2013 WL 5827643, at *11-12 (S.D.N.Y. Oct. 30, 2013) (under New York law, alleged misstatements must proximately cause the alleged loss).

because Plaintiffs do not allege when or to what extent they would have redeemed from the

Funds if the purported misstatements and omissions had not been made, or what they would have

received if they had redeemed their investments.[21]   Indeed, since the putative class includes

nearly all investors in the Funds (6AC ¶ 204) and LightSquared is a private company wholly

owned by the Funds (*id.* ¶ 62), Plaintiffs' hypothesized scenario—where the alleged risks of

LightSquared were fully disclosed and all putative class members redeemed their entire

investments—is factually impossible.   Plaintiffs concede that "[a]s the owner of LightSquared,

rather than an investor in the company, the Funds' options for exiting their position in the

company were greatly reduced."  (*Id.*)  Plaintiffs' theory of causation fails for this reason alone.

Moreover, even accepting all of Plaintiffs' allegations as true, the alleged losses related to

LightSquared would have been incurred "regardless of any earlier misrepresentations" about the

"risk" of the LightSquared investment.  *Starr Found.*, 901 N.Y.S.2d at 249-50 (in rejecting

"holder" claim, noting that defendant's "underlying business decision" to invest in credit default

swaps, and not alleged misrepresentations about risk, caused defendant's stock price to decline).

In other words, the claimed decline in LightSquared's value resulted from the actual risks of the

investment, and not the informational matter of whether those risks were adequately disclosed to

investors.  As in *Starr Foundation*, this disconnect further highlights the absence of causation.

### B.  The 6AC Fails to State a Claim for Negligent Misrepresentation (Count I)

Plaintiffs' negligent misrepresentation claim fails because the 6AC's allegations of a

---

[21]   *See Starr Found.* v. *Am. Int'l Grp., Inc.*, 901 N.Y.S.2d 250 (1st Dep't 2010) (rejecting "holder" claim and noting four-fold speculation as to (1) whether "accurate disclosure of the relevant information" would have caused the claimant to engage in a transaction; (2) when the "hypothetical transaction" would have occurred; (3) the "quantity of the security the claimant would have sold"; and (4) the effect "truthful disclosure would have had on the price of the security within the relevant time frame"); *AHW Inv. P'ship*, 2013 WL 5827643 at *12 (rejecting "holder" claim even where plaintiffs alleged when and how many shares they would have sold, and at what price, since that "hardly reduce[d] the speculation required for the factfinder to credit the allegations").

"special relationship"[22] (6AC ¶¶ 190-97) are entirely conclusory and thus inadequate[23]—especially as to HCP, Holdings, and Falcone.  Moreover, as discussed above in connection with the purported fraud claim, Plaintiffs do not adequately allege that any representation was false, that any Harbinger Defendant had the requisite intent, that Plaintiffs reasonably relied on such representations,[24] or that the alleged misrepresentations caused any losses.  Finally, there can be no liability here for negligent misrepresentation because the exculpatory clauses in the Funds' governing documents foreclose liability except in situations of gross negligence, willful misconduct, or violations of law.  (*See infra* at 21.)

### C.  The 6AC Fails to State a Direct Claim for Breach of Fiduciary Duty (Count III)

Under Delaware law,[25] a claim for breach of fiduciary duty requires (1) the existence of a fiduciary duty and (2) a breach of that duty.  *Steinberg* v. *Sherman*, No. 07 Civ. 1001 (WHP), 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008).  Cayman law is similar, but is limited to certain enumerated fiduciary duties.  (*See Robinson Decl.* ¶¶ 40-42.)

Plaintiffs assert a direct claim for breach of fiduciary duty against Falcone, HCP GP, Special Situations GP, and Special Situations Offshore GP.  As the Court directed in its September 30 Order, the claim may only relate to "nondisclosure or differential treatment

---

[22]   Under New York law, a negligent misrepresentation claim requires the plaintiff to show that:  "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Invs., Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (applying New York law).

[23]   *See, e.g.*, *Toledo Fund, LLC* v. *HSBC Bank USA, Nat'l Assoc.*, No. 11 Civ. 7686 (KBF), 2012 WL 364045, at *6 (S.D.N.Y. Feb. 3, 2012) ("The use of the merely conclusory allegation that such a [special] relationship existed is insufficient as a matter of law.").

[24]   *See DynCorp* v. *GTE Corp.*, 215 F. Supp. 2d 308, 328 (S.D.N.Y. 2002) (fraud and negligent misrepresentation claims involve same standard for reasonable reliance).

[25]   Under New York's internal affairs doctrine, the fiduciary duty claim is governed by Delaware and Cayman law because it is asserted against Falcone and the general partners of Funds incorporated in Delaware and the Cayman Islands.  *Cf. Marino* v. *Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011).

allegations" that are not "predicated on the purchase of SkyTerra." (Sept. 30 Order at 42.) As pleaded in the 6AC, the claim appears to be based on (1) the alleged failure to disclose a loan to Falcone from the Special Situations Fund, and (2) the alleged failure to disclose "side agreements with large institutional investors to receive preferential treatment of redemption requests."[26] (6AC ¶ 224.)

The claim fails as against Falcone because Falcone did not owe a fiduciary duty to Plaintiffs or other investors. *See infra* at 22-23. The claim also fails as against all four defendants because Plaintiffs' allegations of breach are facially deficient. As noted above, Plaintiffs concede that the loan to Falcone from the Special Situations Fund was disclosed to investors (*see* 6AC ¶ 13), and the Funds' governing agreements—which Plaintiffs have expressly acknowledged receiving prior to their investments (4AC ¶ 142)—clearly disclosed that redemption terms could be waived or modified for certain large or strategic investors. (*See* Ex. 17 § 8.02(g); Ex. 18 § 27(a).) In these circumstances, the non-disclosure allegations fail to state a claim.

### D.   The 6AC Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count V)

Plaintiffs' claim against Falcone and Holdings for aiding and abetting breach of fiduciary duty should also be dismissed. The aiding and abetting claim appears to be based on the allegation that Falcone and Holdings "knowingly participated and substantially assisted in" the

---

[26]   The direct claim for breach of fiduciary duty purports to "incorporate by reference . . . each and every allegation" of the 6AC, "except for those averring fraud and those pertaining only to Derivative Claims." (6AC ¶ 221.) Thus, it is not entirely clear what Plaintiffs allege to be the factual bases for this claim. However, the only factual allegations specifically mentioned are the alleged "failure to disclose" the loan from the Special Situations Fund and the "side agreements with large institutional investors." (*Id.* ¶ 224.) In any case, to the extent this claim (if at all) is also based on the LightSquared investment, it is precluded by SLUSA and may only be asserted as a derivative claim. (Sept. 30 Order at 16, 30 & 42.)

alleged non-disclosures of the Falcone loan and "side agreements" given to certain investors.[27]

First, as explained above, Plaintiffs have failed adequately to allege any underlying breach.[28] *Supra* at 17.  Second, New York, Delaware and Cayman law (to the extent Plaintiffs are alleging an equivalent to an aiding and abetting claim)[29] all require (among other things) factual allegations establishing that the alleged aider and abettor "knowingly participated" in the alleged breach.  *Marino*, 810 F. Supp. 2d at 613; Robinson Decl. ¶ 88.  The 6AC contains no factual allegations supporting this element, and the "[t]hreadbare recitals" that Falcone and Holdings caused HCP GP, Special Situations GP and Special Situations Offshore GP to make false statements and omissions are inadequate as a matter of law.  *Ashcroft*, 556 U.S. at 678-79.  Third, no aiding and abetting claim lies against Special Situations Offshore GP because Cayman law does not recognize that cause of action, and Plaintiffs do not properly plead the nearest analogous cause of action.  (*See* Robinson Decl. ¶¶ 86-89.)

## IV.   The Derivative Claims (Counts VI and VII) Should Also Be Dismissed

Plaintiffs purport to assert derivative claims under Delaware law on behalf of Fund I, Fund II and the Special Situations Fund against Holdings, HCP GP, Special Situations GP, and Falcone.[30]  (6AC ¶¶ 238-47.)  These claims appear to challenge (1) the fact of the

---

[27]   As with the direct breach of fiduciary duty claim, the factual bases for this claim are not entirely clear, but to the extent the aiding and abetting claim purports to challenge the LightSquared investment, it would fail for the same reasons as the claim for a primary breach.  *See supra* n.26.

[28]   The absence of an underlying breach is fatal to Plaintiffs' aiding and abetting claim regardless of whether Delaware, New York or Cayman law applies.  *See, e.g., Related Westpac LLC* v. *JER Snowmass LLC*, C.A. No. 5001-VCS, 2010 WL 2929708, at *8 (Del. Ch. July 23, 2010); *Roberts* v. *112 Duane Assocs. LLC*, 821 N.Y.S.2d 33, 35 (1st Dep't 2006); Robinson Decl. ¶ 87.

[29]   While the result is the same under New York law, Delaware and Cayman law apply to the aiding and abetting claim because all of the Funds are incorporated in Delaware or the Cayman Islands.  *See Buckley* v. *Deloitte & Touche USA LLP*, No. 06 Civ. 3291, 2007 WL 1491403, at *13 (S.D.N.Y. May 22, 2007) ("[C]ourts in this district have regularly held that because claims of aiding and abetting a breach of fiduciary duty relate to the internal affairs of a corporation, they are also governed by the law of the state of incorporation.").

[30]   The derivative claim purportedly asserted on behalf of Fund II also fails for the threshold reason that no Plaintiff is a limited partner in Fund II.  (*See* Dkt. Nos. 129 & 144 (Memo. of Law and Reply Memo. of Law in Support of Fund II's Motion for Reconsideration).)

LightSquared investment itself, (2) the subject matter of the SEC actions, and (3) the alleged

"reporting [of] inflated asset values thus resulting in inappropriately high fees being paid to

Defendants."  (*Id.* ¶¶ 240 & 245.)

### A.  The Court Should Decline to Exercise Supplemental Jurisdiction

If the class claims are dismissed, the Court should decline to exercise supplemental

jurisdiction over the derivative claims and should dismiss the 6AC in its entirety.  This action

involves exclusively state-law claims, and the parties are not completely diverse.  (*See* 6AC ¶¶

23-24 (Plaintiffs Schad and Klein Family Partnership L.P. are domiciled in New York) & 34

(Defendant Falcone is domiciled in New York).)  Thus, Plaintiffs have invoked the Class Action

Fairness Act of 2005 ("CAFA") as the sole basis for original jurisdiction in federal court.  (*Id.* ¶

21.)  To the extent the class claims proceed, 28 U.S.C. § 1367(a) may confer supplemental

jurisdiction over Plaintiffs' derivative claims.  (*See* 6AC ¶ 21.)

If the class claims are dismissed, however, 28 U.S.C. § 1367(c)(3) expressly authorizes

dismissal of the derivative claims.[31]  The Court's decision "whether to exercise [supplemental]

jurisdiction after dismissing every claim over which it had original jurisdiction is purely

discretionary."  *Carlsbad Tech., Inc.* v. *HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C.

§ 1367(c)).  In making the decision, the Court should balance the traditional values of judicial

economy, convenience, fairness, and comity.  *Kolari* v. *New York-Presbyterian Hosp.*, 455 F.3d

118, 122 (2d Cir. 2006).

Here, the action is at an early stage, with no party yet to file a responsive pleading, and if

---

[31]  *See, e.g.*, *Oskar* v. *IDS Property Cas. Ins. Co.*, No. 09-CV-04516, 2011 WL 1103905, at *7-8 (E.D.N.Y. March 23, 2011) (where original jurisdiction rested only on CAFA, court declined to exercise supplemental jurisdiction over "any surviving individual claims" after dismissal of class claims); *Delebreau* v. *Bayview Loan Servicing, LLC*, 770 F. Supp. 2d 813, 822 (S.D. W. Va 2011) (where court had "original jurisdiction under CAFA over the plaintiffs' purported class claims," court declined to exercise supplemental jurisdiction over plaintiffs' individual breach of contract claim after dismissal of class claims).

CAFA no longer provides original jurisdiction, there is no reason to expend federal resources on adjudicating state-law claims among non-diverse parties.  Alternatively, the Court may exercise supplemental jurisdiction and, for the reasons below, dismiss the derivative claims on the merits.

### B.  Plaintiffs Have Not Established Demand Futility as to Fund I or Fund II

The derivative claim asserted on behalf of Fund I and Fund II (Count VI) should be dismissed because Plaintiffs have not established demand futility.

In the September 30 Order, the Court allowed Plaintiffs to assert derivative claims on behalf of Fund I, Fund II and the Special Situations Fund.  The Court reasoned that Falcone was "personally interested in the outcome of this litigation" because Plaintiffs had adequately alleged willful misconduct based on a loan to Falcone, which fell outside the scope of the exculpatory clauses in the Funds' governing agreements and thus carried a "substantial likelihood" of Falcone's personal liability.  (Sept. 30 Order at 36-37.)  The Court also ruled on whether various aspects of Plaintiffs' breach of fiduciary duty claims were derivative or direct, and thus permitted Plaintiffs to "re-plead any remaining claims in a manner consistent with [the Court's] opinion." (*Id.* at 43.)  On October 4, 2013, Plaintiffs stated their intent to amend the pleading (Dkt. No. 126), and the 5AC was filed on October 14, 2013.  The 6AC followed on November 4, 2013.

As re-pled in the 6AC, Plaintiffs' purported derivative claim on behalf of Fund I and Fund II (Count VI) is not predicated on the loan to Falcone, and properly so, because the Falcone loan only involved the Special Situations Fund (6AC ¶ 13).  Instead, that claim primarily challenges the fact of the LightSquared investment and alleged preferential treatment given to "large institutional investors."[32]  (*Id.* ¶ 240.)

---

[32]   Count VI's reference to "subjecting the Fund to SEC civil fraud actions" also does not support personal liability, because it is a matter of judicial notice that the Funds have not been subjected to any SEC action of any kind, and because Plaintiffs only specifically allege damages from these matters in connection with LightSquared.  (*See* 6AC ¶ 133.)

20

As thus formulated, the claim does not carry a "substantial likelihood" of personal liability for Falcone.  First, as explained below, the exculpatory clauses in the Funds' governing agreements insulate Falcone from liability related to LightSquared.  Second, the preferential treatment allegations are not properly the subject of a derivative claim, and should be dismissed for that reason alone.  (Sept. 30 Order at 19 ("To the extent that Plaintiffs' breach of fiduciary duty claims rest on those allegations [of preferential treatment], they are direct, not derivative.").)  Thus, because the derivative claim asserted on behalf of Fund I and Fund II cannot lead to personal liability for Falcone as a matter of law, Plaintiffs have made no showing that Falcone is "personally interested in the outcome" of that claim (*id.* at 36).  Accordingly, demand should not be excused as to Fund I or Fund II, and Count VI should be dismissed.

### C.  The Derivative Claims Fail as a Matter of Law

Even if demand were excused, Plaintiffs' derivative claims fail for several additional reasons.  First, to the extent the claims relate to the LightSquared investment, they are barred by the exculpation clauses of the relevant Funds' limited partnership agreements.  All defendants to the derivative claims (Holdings, HCP GP, Special Situations GP, and Falcone) are general partners of the relevant Funds, or the general partners' principals, officers, directors, affiliates, or employees, and thus are covered by the exculpation clauses.  (6AC ¶¶ 29, 31, 32 & 34; Ex. 17 § 3.03(a); Ex. 19 § 2.05; Ex. 20 § 2.05.)  For the reasons discussed below in connection with Rule 9(b), with respect to LightSquared Plaintiffs do not adequately plead a non-exculpated claim (such as gross negligence, willful misconduct, or violation of applicable law) "based on particularized facts."  *Guttman* v. *Huang*, 823 A.2d 492, 501 (Del. Ch. 2003).  Plaintiffs fundamentally misconstrue Delaware law by alleging that the LightSquared investment somehow constituted a breach of the duty of care because it was allegedly a "high-risk equity investment." (6AC ¶¶ 240 & 245.)  The duty of care is process-oriented and not a guarantee that investments

will be profitable,[33] and Plaintiffs allege no facts to support any procedural deficiencies related to

LightSquared.[34]   Nor does anything about the LightSquared investment support a breach of the

duty of loyalty.  As noted above, Falcone himself invests in the Funds, and Plaintiffs never

explain how a portfolio investment that stood to benefit all investors was somehow in the

Harbinger Defendants' interests "and not in the best interests of the Funds."[35]   (*Id.* ¶¶ 240, 245.)

Second, the derivative claims are also fatally deficient as against Holdings and Falcone

because Holdings and Falcone do not owe fiduciary duties to Fund I, Fund II or the Special

Situations Fund.  Neither Holdings nor Falcone is the general partner of any of these Funds,

which are organized as limited partnerships under Delaware law.  (*Id.* ¶¶ 31 & 36-37.)  Instead,

Holdings is the manager of each general partner, and Falcone is the managing member of

---

[33]   *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967-68 (Del. Ch. 1996) (in analogous corporate context, directors' compliance with the duty of care "can never appropriately be judicially determined by reference to *the content of the board decision* that leads to a corporate loss, apart from consideration of the good faith *or* rationality of the process employed"); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651 (Del. Ch. 2008) ("[T]he plaintiffs are in reality down to the argument that the Lear board did not make a prudent judgment about the possibility of future success.  That is, the plaintiffs are making precisely the kind of argument precluded by the business judgment rule."); *Trenwick Am. Litig. Trust* v. *Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006) ("[T]he complaint argues from hindsight, that the fact that the holding company's strategy ultimately failed must mean that the process that led to its adoption was the product of culpably sloppy efforts."); *Khanna* v. *McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *26 n.203 (Del. Ch. May 9, 2006) ("Although the acquisition appears disastrous with the benefit of hindsight, the Court cannot permit the *ex post* results of a decision to cloud analysis of a board's *ex ante* judgment.").

[34]   *See, e.g.*, *In re Nat'l Auto Credit, Inc. S'holders Litig.*, No. Civ. A. 19028, 2003 WL 139768, at *12 (Del. Ch. Jan. 10, 2003) ("The Plaintiffs have set forth nothing but conclusory descriptions of any deficiency in the Board's decision-making process."); *Ash*, 2000 WL 1370341 at *10 ("Plaintiffs' allegations that directors were less than fully informed of reasonably available material information or that they considered the merger in any other procedurally unsound manner [rely] entirely on the wisdom of hindsight.").

[35]   We are not aware of any Delaware authorities suggesting that a defendant's alleged personal "vision," in the context of an arm's-length investment meant to benefit all investors, could constitute a breach of the duty of loyalty.  Plaintiffs have not asserted any of the traditional bases for attacking the presumption of loyalty with respect to a challenged business transaction, such as self-dealing, an entrenchment motive, or the desire to confer benefits on a child or relative.  And irrespective of any allegations about a personal "vision," since Falcone himself "invests in the Funds" (6AC ¶ 34), Falcone's pecuniary interests are precisely aligned with Plaintiffs', which negates the purported conflict of interest.  *Cf. In re Synthes S'holder Litig.*, 50 A.3d 1022, 1038 (Del. Ch. 2012) (rejecting plaintiffs' theory that 76-year-old director was conflicted in approving merger transaction because he wanted liquidity to "structur[e] his retirement," supposedly in tension with other shareholders' "interest in maximizing their share value"; because plaintiffs "conceded at oral argument that *they also wanted liquidity for their shares*," the director's interests "were precisely aligned with the plaintiffs' in terms of seeking the best deal," and the "supposed liquidity conflict was not really a conflict at all").

Holdings.  (*Id.* ¶¶ 29 & 34.)  As a matter of Delaware law, the person or entity who controls the

general partner of a limited partnership does not owe fiduciary duties to the partnership or its

individual partners.  Although the Delaware Court of Chancery held 22 years ago, in *In re*

*USACafes, L.P. Litig.*, 600 A.2d 43 (Del. Ch. 1991), that the individual directors of a corporate

general partner owed a duty of loyalty to the limited partnership and its limited partners, the

Delaware Supreme Court has not ruled on the issue and *USACafes* is not a likely indication of

how the state Supreme Court would decide the issue today, as more recent decisions have

criticized the reasoning of *USACafes*.[36]  Indeed, last year, in *Feeley*, Vice Chancellor Laster

noted that the Delaware Supreme Court "might hold, contrary to *USACafes*, that when parties

bargain for an entity to serve as the fiduciary, that entity is the fiduciary, and the parties cannot

later circumvent their agreement by invoking concepts of control or aiding and abetting."  62

A.3d at 671.  And even under *USACafes*, no claim for breach of fiduciary duty can be maintained

against Holdings or Falcone with respect to LightSquared, as such a claim does not implicate the

duty of loyalty.  The allegations about LightSquared—an allegedly unsuccessful investment

made at arm's length—only implicate the duty of care.  Thus, at minimum, the derivative claims

related to LightSquared should be dismissed as against Holdings and Falcone.  *Feeley*, 62 A.3d

at 672 (dismissing claim for duty of care).

       Third, the derivative claims should be dismissed in their entirety because Plaintiffs have

not adequately alleged any breach of fiduciary duty.  As to LightSquared, the claimed breach

---

[36]   *USACafes* has been confined to the "clear application" in that case, where the directors attempted to "use
control over the partnership's property to advantage [themselves] at the expense of the partnership."  *Feeley* v.
*NHAOCG, LLC*, 62 A.3d 649, 670-72 (Del. Ch. 2012).  Courts and commentators have noted that the *USACafes*
holding stands in tension with traditional principles of corporate separateness and veil-piercing under Delaware
law.  *Paige Capital Mgmt., LLC* v. *Lerner Master Fund, LLC*, Civ. A. No. 5502-CS, 2011 WL 3505355, at *30
& n.186 (Del. Ch. Aug. 8, 2011) (noting "concerns" and commenting that *USACafes* reached its conclusion
"without much analysis of why the investors in the limited partnership were not required, in the absence of a
reason for veil piercing, to look solely to the entity they knew was their fiduciary for relief"); Lubaroff &

rests on perfunctory allegations of undisclosed risk and a supposed deviation from the Funds'

disclosed investment strategy.  But as the Harbinger Defendants previously demonstrated, the

LightSquared investment was fully consistent with the broad investment discretion under the

Funds' governing documents, which was accurately described in the offering materials.  (Dkt.

No. 102 at 14; Exs. 2-7.)  Similarly, both the loan to Falcone from the Special Situations Fund

(which was repaid in full (Ex. 15 ¶ 59)), as well as the alleged "side agreements" with certain

investors, were permitted by the Funds' governing agreements.  (Ex. 17 § 8.02(g); Ex. 18 §

27(a); Ex. 20 § 2.02(i).)  And Plaintiffs' allegation of a breach based on "subjecting [Fund I,

Fund II and the Special Situations Fund] to SEC civil fraud actions" (6AC ¶¶ 240 & 245) rests

on a false premise, as the SEC has never brought enforcement actions against those Funds.  (*See*

*id.* ¶¶ 101, 103, 110.)  In any event, Plaintiffs have failed to allege any viable theory of damages

related to the SEC actions.  The notion that the Falcone loan and the alleged preferential

treatment somehow caused $3 billion in losses by making LightSquared "politically toxic" and

preventing "a political solution" (*id.* ¶¶ 133 & 200) is implausible on its face and has no factual

support.

## V.     Particularity[37]

Even if Plaintiffs' class claims could survive the foregoing—and they cannot—they

should be dismissed because Plaintiffs have failed to plead them with the "particularity" required

by Fed. R. Civ. P. 9(b).[38]  To satisfy the particularity requirement, the complaint must (1)

---

Altman, DELAWARE LIMITED PARTNERSHIPS § 11.2.11 (noting "particularly troubling aspects" of decision). Plaintiffs, of course, have made no showing of veil-piercing as against Holdings or Falcone.

[37]   The 6AC is not entirely clear, but Plaintiffs' derivative claims (Counts VI and VII) do not appear to rest on allegations of non-disclosure.  However, to the extent Counts VI and VII were intended to advance a non-disclosure theory, Plaintiffs have failed to satisfy Rule 9(b)'s particularity requirement for these claims as well.

[38]   The particularity requirement applies to all claims alleging fraud or mistake, "whatever may be the theory of legal duty—statutory, common law, tort, contractual, or fiduciary."  *Frota* v. *Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); *see also Lewis* v. *Rosenfeld*, 138 F. Supp. 2d 466, 477-78 (S.D.N.Y. 2001)

identify the allegedly fraudulent statements; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Moreover, where "fraud is alleged against multiple defendants, the acts complained of by each defendant should be separately set forth in the [c]omplaint."  *Lasky* v. *Shearson Lehman Bros. Inc.*, 139 F.R.D. 597, 598 (S.D.N.Y. 1991) (citing *Zerman* v. *Ball*, 735 F.2d 15, 22 (2d Cir. 1984)).

The class claims fail these requirements.  As to LightSquared, Plaintiffs improperly attribute virtually all of the alleged misstatements to "Harbinger" (defined to include all six Harbinger Defendants, 6AC ¶ 35) or "Defendants."[39]  (*See, e.g.*, *id.* ¶¶ 150-53; 160-67; 172-87.) Plaintiffs also fail to allege particularized facts concerning the alleged misrepresentations or omissions about the Falcone loan or the preferential redemptions.  (*See id.* ¶¶ 105 & 109.) Finally, Plaintiffs fail to allege separately the "acts complained of by each defendant," *Lasky*, 139 F.R.D. at 598, instead relying on conclusory assertions of common control and collective wrongdoing.[40]  This failure, especially where the Court expressly directed Plaintiffs to "clearly outline[] . . . the particular allegations supporting each claim" (Sept. 30 Order at 43), warrants dismissal of all claims.[41]

---

(common law fraud under New York law); *Hampshire Equity Partners II, L.P.* v. *Teradyne, Inc.*, No. 04 Civ. 3318, 2005 WL 736217, at *2 (S.D.N.Y. Mar. 30, 2005) (fraud and negligent misrepresentation); *Marino*, 810 F. Supp. 2d at 606 (breach of fiduciary duty and aiding and abetting breach of fiduciary duty).

[39]   The only arguable exceptions attribute statements to non-parties (6AC ¶¶ 156, 158 (alleging statements by Sanjiv Ahuja)), 168 ("LightSquared issued a Press Release")), plainly are non-actionable (*id.* ¶ 168 (alleging that Falcone described LightSquared's launch as a "milestone")), or fail the particularity requirement independently from their failure to identify the speaker (*id.* ¶¶ 154-155 (alleging that Falcone "told investors that the Funds were equally exposed to long and short positions 'to hedge risk'" and that the statement was false because LightSquared and "other long positions . . . far outweighed the shorts")).

[40]   (*E.g.*, 6AC ¶¶ 197 (alleging that all Defendants "are ultimately controlled by or affiliated with" Falcone); 127 ("Defendants . . . materially deviated from [the Funds' stated investment] objective . . . ."); 129 ("Defendants breached their duties to the Funds . . . .").)

[41]   *See Golden Archer Investments, LLC* v. *Skynet Fin. Sys.*, No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *8 (S.D.N.Y. Jan. 3, 2012) ("Rule 9(b) requires that [plaintiffs] differentiate [their] allegations as to each defendant and inform each defendant separately of the specific allegations."); *cf. Zerman*, 735 F.2d at 22 ("Although the

**CONCLUSION**

For the reasons above, the Harbinger Defendants respectfully request that the Court

dismiss the 6AC with prejudice.

Dated:  New York, New York
            November 26, 2013

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
        & GARRISON LLP
By: /s/ Daniel J. Leffell

Leslie Gordon Fagen (lfagen@paulweiss.com)
Daniel J. Leffell (dleffell@paulweiss.com)
Steven C. Herzog (sherzog@paulweiss.com)
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

*Attorneys for Defendants Harbinger Capital Partners LLC,*
*Harbinger Holdings, LLC, Harbinger Capital Partners GP,*
*L.L.C., Harbinger Capital Partners Special Situations GP,*
*LLC, Harbinger Capital Partners Special Situations*
*Offshore GP, L.L.C., and Philip A. Falcone*

---

complaint is liberally sprinkled with general statements that 'all defendants' acted fraudulently . . . and made misrepresentations and omissions[,] nowhere does it assert that either of the individual defendants ever made any statement to [plaintiff].").